JAMES A. MARISSEN (SBN: 257699)
jmarissen@grsm.com
RACHEL A. WEITZMAN (SBN: 307076)
rweitzman@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
2211 Michelson Drive, Suite 400
Irvine, CA 92612
Telephone: (949) 255-6996
Facsimile: (949) 474-2060

Attorneys for Plaintiff
HAPAG-LLOYD AKTIENGESELLSCHAFT, HAMBURG

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAPAG-LLOYD AKTIENGESELLSCHAFT, HAMBURG,<br><br>Plaintiff,<br><br>vs.<br><br>CTS GLOBAL LOGISTICS (GEORGIA) INC. d/b/a CTS GLOBAL SUPPLY CHAIN SOLUTIONS; CTS INTERNATIONAL LOGISTICS CO., LTD.; and SHENZHEN CTS INTERNATIONAL LOGISTICS CO., LTD.,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT** |

COMES NOW Plaintiff HAPAG-LLOYD AKTIENGESELLSCHAFT, HAMBURG ("HAPAG-LLOYD"), and as its Complaint and causes of action against Defendants CTS GLOBAL LOGISTICS (GEORGIA) INC. d/b/a CTS GLOBAL SUPPLY CHAIN SOLUTIONS, CTS INTERNATIONAL LOGISTICS CO., LTD., and SHENZHEN CTS INTERNATIONAL LOGISTICS CO., LTD. (collectively "Defendants") alleges as follows:

**JURISDICTION AND VENUE**

1. This is a maritime claim for breach of contract and unpaid freight, detention, demurrage and/or storage costs pursuant to ocean sea waybills and an ocean carrier's tariff and comprises an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1). In the alternative, it presents a federal question under 28 U.S.C. § 1331 in that it arises under the Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101 et seq.

2. This Court also has diversity jurisdiction under 28 U.S.C. § 1332, as there exists complete diversity of citizenship among the parties hereto and the amount in controversy exceeds the sum of $75,000.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) in that at least one of Defendant's place of business is within the judicial district of this Court, and as such resides within the judicial district of this Court. Moreover, the transactions that form the basis for the subject contracts for ocean carriage occurred within the judicial district of this Court.

**PARTIES**

4. Plaintiff HAPAG-LLOYD is now and was at all material times a foreign corporation duly organized and existing under the laws of Germany with a principal place of business in Hamburg, Germany. HAPAG-LLOYD was, and is, an ocean carrier and common carrier of goods for hire on ocean-going vessels between United States ports and foreign ports.

5. Defendant CTS GLOBAL LOGISTICS (GEORGIA) INC. d/b/a CTS GLOBAL SUPPLY CHAIN SOLUTIONS ("CTS Global") is now and was at all material times a Georgia corporation with an office at 19855 Quiroz Court, City of Industry, CA 91789.

6. Defendants CTS INTERNATIONAL LOGISTICS CO., LTD. and SHENZHEN CTS INTERNATIONAL LOGISTICS CO., LTD (collectively "CTS International") is a business entity organized and existing under the laws of the People's Republic of China ("PRC") with its principal place of business located at

Gordon Rees Scully Mansukhani, LLP
2211 Michelson Drive, Suite 400
Irvine, CA 92612

20/F, Tian An Centre, No. 338 Nanjing Road (West), Shanghai 200003.  CTS maintains offices in more than one city in PRC, including at 4/F CTS Warehouse Kaiping Road No. 2, Overseas Chinese Town, Nanshan District, Shenzhen, China.

7.  Defendant CTS Global is, and at all material times was, the named shipper on the sea waybills relevant to this Complaint.

8.  Defendant CTS Global is, and at all material times was, a freight forwarder doing business in the United States with licensing from the Federal Maritime Commission.

9.  Defendant CTS International is, and at all material times was, the named consignee on the sea waybills relevant to this Complaint and also issued house bills of lading for the shipments at issue in this Complaint.

10.  Defendant CTS International is, and at all material times was, a non vessel owning common carrier ("NVOCC") doing business in the United States with licensing from the Federal Maritime Commission.

11.  Defendants CTS Global and CTS International are, and at all material times were, bonded with the Federal Maritime Commission in relation to their freight forwarding and NVOCC activities in the United States.

## FACTUAL BACKGROUND

12.  Between October and December 2015, Defendant CTS Global booked seventy-six (76) containers of cargo (the "Cargo") for shipment with HAPAG-LLOYD for carriage from Norfolk, Virginia to Gaolan, China.  CTS Global represented and warranted that the containers contained "copper ingot."  In accordance with the booking, HAPAG-LLOYD designated "CTS Global Supply Chain Solution" as the shipper of the Cargo and "Shenzhen CTS International Logistics Co., Ltd.," being the Shenzhen branch of Defendant CTS International Logistics Co., Ltd., as the consignee of the Cargo.

13.  HAPAG-LLOYD received the Cargo and transported the seventy-six (76) containers on various vessels from Virginia to Gaolan, pursuant to the terms

-3-

and conditions of HAPAG-LLOYD Sea Waybill Numbers: HLCUCHI1509APTO8, HLCUCHI151007174, HLCUCHI151049142, and HLCUCHI151178348 (the "HAPAG-LLOYD Sea Waybills").

14. Defendant CTS International, in its capacity as an NVOCC, issued its own "house" bills of lading covering the transportation of the Cargo from St. Louis Missouri to Gaolan, China via the port in Norfolk, Virginia, including but not limited to CTS International House Bill Nos. WTSI15090067 and WTSI15100007, (the "CTS Bills of Lading"). The CTS Bills of Lading named "Asia Global Renewable Energy Corp" and "DJL Mining Corp." as the shipper of the Cargo. The Cargo was consigned "to order," thus no named consignee was designated in the CTS Bills of Lading. Under the terms of the CTS Bills of Lading, CTS was permitted to subcontract the whole or part of the handling, storage, or carriage of the Cargo with other carriers. Here, HAPAG-LLOYD was the subcontracted ocean carrier.

15. HAPAG-LLOYD is informed and believes and thereupon alleges that Defendants CTS Global and CTS International were at all material times the shipper, holder, consignee, receiver of the Cargo, and/or person owning or entitled to the possession and control of the Cargo and/or the HAPAG-LLOYD Sea Waybills, and/or the person or entity acting on behalf of such persons and thus qualify as a "Merchant" under Clause 1 of the HAPAG-LLOYD Sea Waybills (defined below). The Defendants, and each of them, were entities for whose account the transportation services were provided by HAPAG-LLOYD, were the parties that received and benefitted from the transportation services provided by HAPAG-LLOYD, and were the entities responsible for payment of the charges relating to the Cargo.

16. The Cargo was tendered by Defendants to HAPAG-LLOYD for transportation between United States and Gaolan, China on ocean vessels for

which freight and other charges were lawfully incurred pursuant to the terms of the HAPAG-LLOYD Sea Waybills and/or HAPAG-LLOYD's applicable tariff(s).

17. HAPAG-LLOYD is informed and believes and thereupon alleges that Defendants received and accepted the HAPAG-LLOYD Sea Waybills.

18. The HAPAG-LLOYD Sea Waybills contract terms and conditions provide the following:

> ...
>
> **1. Definitions**
>
> ...
>
> **"Merchant"** includes the shipper, holder of the Sea Waybill, consignee, the person to whom the data have been forwarded as provided for in clause 2(2) and the receiver of the Goods.
>
> ...
>
> **10. CARRIAGE AFFECTED BY CONDITION OF GOODS**
>
> If it appears at any time that, due to their condition, the Goods cannot safely or properly be carried further or without incurring additional expense or taking any measure(s) in relation to the Container or the Goods, the Carrier may without notice to the Merchant take any measure(s) and/or incur any additional expense to carry or to continue the Carriage thereof, and/or sell or dispose of the Goods, and/or abandon the Carriage and/or store them ashore or afloat, under cover or in the open, at any place, whichever the Carrier, in his absolute discretion, considers most appropriate, which abandonment, storage, sale or disposal shall be deemed to constitute due delivery under this Sea Waybill. The Merchant shall indemnify the Carrier against any additional expense and liability so incurred.

…

**12. MERCHANT'S RESPONSIBILITIES**

(1) All of the Persons coming within the definition of Merchant in Clause 1 shall be jointly and severally liable to the Carrier for the fulfilment of all obligations and warranties undertaken by the Merchant either in this Sea Waybill, or required by law. The Merchant shall indemnify the Carrier against all loss, damage, expenses and fines, arising or resulting from any breach of these obligations and warranties.

(2) The Merchant shall comply with all regulations or requirements of customs, ports and/or other authorities and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including Freight or any additional Carriage) incurred or suffered by reason of any failure to so comply, or by reason of any illegal, incorrect, or insufficient marking, number or addressing of the Goods or the discovery of any drugs, narcotics, stowaways or other illegal substances within Containers packed by the Merchant or inside Goods supplied by the Merchant, or stamp duty imposed by any country, and shall indemnify the Carrier in respect thereof.

…

**14. FREIGHT**

(1) Freight shall be deemed fully earned on receipt of the Goods by the Carrier and shall be paid and nonreturnable in any event.

(2) Freight has been calculated and must be paid on the basis of particulars furnished by or on behalf of the shipper. If the particulars furnished by or on behalf of the shippers are

incorrect, liquidated damages must be paid to the Carrier, in accordance with the applicable Tariff.

(3) All Freight shall be paid without any set-off or counterclaim unless the claim is not in dispute or confirmed by final court decision.

(4) If the Merchant fails to pay the Freight when due, he shall be liable for all costs, liquidated damages in accordance with the applicable Tariff and in particular interest which accrues until payment.

…

**18. MATTERS AFFECTING PERFORMANCE**

If at any time the Carriage is or is likely to be affected by any hinderance, risk, danger, delay, difficulty or disadvantage of any kind including but not limited to war, civil commotion, political unrest, piracy, act of terrorism and threat thereof and howsoever arising (even though the circumstances giving rise to such hindrance, risk, danger, delay, difficulty or disadvantage existed at the time this contract was entered into or when the Goods were received for the Carriage), then the Carrier (whether or not the Carriage is commenced) may, at its sole discretion and without prior notice to the Merchant, either:

(1) carry the Goods to the contracted port of discharge or place of delivery, whichever is applicable by an alternative route to that indicated on page 2 of this Sea Waybill or that which is usual for Goods consigned to that port of discharge or place of delivery and shall be entitled to charge such additional Freight; or

(2) suspend the Carriage of the Goods and store them ashore or afloat and endeavor to forward them as soon as reasonably possible and shall be entitled to charge such storage costs and additional Freight; or

(3) abandon the Carriage of the Goods and place them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Merchant shall pay any additional costs of the Carriage to, and delivery and storage at, such place or port.

...

**20. NOTIFICATION AND DELIVERY**

...

(2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's Applicable Tariff. If the Merchant fails to do so the Carrier shall be entitled, without notice, to unpack the Goods if packed in Containers and / or to store the Goods ashore, afloat, in the open or under cover, at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon the liability of the Carrier in respect of the Goods stored as aforesaid shall wholly cease, and the Merchant shall be responsible for the costs of such storage, as well as detention and demurrage.

(3) If the Merchant fails to take delivery of the Goods within thirty days of delivery becoming due under Clause 20 (2), or if in the opinion the Carrier they are likely to deteriorate, decay, become worthless or incur charges whether for storage or otherwise in excess of their value, the Carrier may, without

      prejudice to any other rights which he may have against the Merchant, without notice sell, destroy or dispose of the Goods and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant.

19.     HAPAG-LLOYD is informed and believes that the Cargo was loaded and discharged by various carrying vessels in Hong Kong pursuant to instructions received by Defendants. However, Defendants refused to provide shipping instructions and/or customs documentations and/or take delivery of the seventy-six (76) containers and they remained idle at the marine terminal in Hong Kong (the "Idle Containers") between November 2015 and July 2016 thereby accruing various daily and other charges including, for example, detention and demurrage. Having delivered the Cargo, HAPAG-LLOYD fully performed all of its obligations under the HAPAG-LLOYD Sea Waybills.

20.     The Idle Containers consist of the following shipments:

    (a)     A shipment of twenty-three (23) containers, being containers numbered: CHLU3605105, TGHU2527467, HLXU3411901, CAIU2683572, HLXU3360471, FCIU2473194, BEAU2171186, HLXU1080954, HLXU1306907, TTNU1999069, FSCU3852490, HLXU3391282, HLXU1267246, HLXU3473360, TCLU2880834, BSIU2288608, XINU1158666, BEAU2219000, TGHU2850973, TGHU2745319, FCIU2583020, HLXU2307894, and CPSU1068585 that were shipped under HAPAG-LLOYD Sea Waybill No. HLCHUCHI1509APTO8;

    (b)     A shipment of twenty-six (26) containers, being containers numbered: CAXU6291102, TCLU2833489, DRYU2007692, HLXU1085869, HLXU1248014, TRLU9354698, TEMU5449860, GATU1306421, AMFU3225283, HLXU1075881, GESU3431562, TGHU2838387, HLXU1022705, FSCU7919668, HLXU3398219, GLDU3402869, HLXU1148083, HLXU3511330, HLXU3299710, DFSU2669447, FCIU3518117, GESU3513742,

1  GLDU5328288, GLDU3896740, FCIU2781941, and CAXU6301915 that were
2  shipped under HAPAG-LLOYD Sea Waybill No. HLCUCHI151007174;
3        (c)    A shipment of one (1) container, being container
4  GESU2060770 that was shipped under HAPAG-LLOYD Sea Waybill No.
5  HLCUCHI151049142; and
6        (d)    A shipment of twenty-six (26) containers, being containers
7  numbered: GLDU3165197, HLXU2374402, HLXU3445943, CAXU6233852,
8  TGHU2417500, DRYU2013490, DFSU2674340, CPSU1810061, HLBU1238493,
9  GATU0441176, TGHU0883957, HLBU1095432, CAXU6697982,
10  CLHU2159420, HLXU3493978, HLXU2357489, FSCU3813301, CPSU1785992,
11  TCLU2847918, GLDU5798830, CAIU2678370, HLXU1239270, FSCU7695104,
12  HLXU1384474, GATU1352108, and HLXU3383800 that were shipped under
13  HAPAG-LLOYD Sea Waybill No. HLCUCHI151178348.
14      21.    Despite receiving notice of arrival of the Cargo in Hong Kong,
15  Defendants, and each of them, failed and refused provide the required shipping
16  instructions and/or customs documentation for the Cargo to be further transported
17  from Hong Kong to Gaolan, China.  Further preventing discharge of the Cargo in
18  Gaolan, a third-party purporting to act as the owner of the Cargo and/or holder of
19  the HAPAG-LLOYD Sea Waybills filed an emergency action in Hong Kong and
20  obtained an injunction preventing the further movement of the Cargo from Hong
21  Kong.
22      22.    HAPAG-LLOYD is informed and believes and thereupon alleges that
23  the contents of the Idle Containers which comprise the shipments were loose mud
24  and sand instead of "copper ingot" which, as mislabeled or misdeclared goods, are
25  banned from importation into China.  This misdescription is in violation of the
26  merchant's warranty under Clauses 12 and 14 of the HAPAG-LLOYD Sea
27  Waybills.
28

*Gordon Rees Scully Mansukhani, LLP*
*2211 Michelson Drive, Suite 400*
*Irvine, CA 92612*

23. HAPAG-LLOYD subsequently arranged for the destruction of the Cargo in the Idle Containers and incurred additional costs for the transshipment and destruction of the Cargo in the Idle Containers.

24. As a result of the Defendants' failure to provide the required shipping instructions and/or customs documentation and/or take delivery of the Idle Containers, and its misdeclaration on the HAPAG-LLOYD Sea Waybills, HAPAG-LLOYD has incurred damages, liabilities, charges, expenses, fees and costs for storage, detention, demurrage, customs and local fees, inspection, transportation, salvage, transshipment, disposal, and destruction.

25. Under the terms of the HAPAG-LLOYD Sea Waybills, Defendants are obligated to pay these costs, damages, and expenses due and owing by Defendants to HAPAG-LLOYD totaling approximately US$1,867,163.68.

26. HAPAG-LLOYD fully performed all of its obligations under the HAPAG-LLOYD Sea Waybills. Defendants received and benefitted from the transportation services provided by HAPAG-LLOYD, and is responsible for payment of these various damages, expenses and costs relating to the Idle Containers.

**FIRST CAUSE OF ACTION**

(For Breach of Maritime Contract)

27. HAPAG-LLOYD refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 26 above.

28. HAPAG-LLOYD transported and carried the Cargo in the Idle Containers as described herein, at the request and for the benefit of the Defendants, in accordance with the terms and conditions of the HAPAG-LLOYD Sea Waybills.

29. HAPAG-LLOYD fully performed all of its obligations under the HAPAG-LLOYD Sea Waybills and carried the Cargo in the Idle Containers to and discharged the Cargo at Hong Kong, as demanded by Defendants.

30. Under the terms of the HAPAG-LLOYD Sea Waybills and applicable law, the Defendants required to provide shipping instructions and/or customs documentation and/or to accept delivery of the Cargo within the time provided for in HAPAG-LLOYD's Sea Waybills and/or HAPAG-LLOYD's applicable tariff, and they agreed to be responsible and liable for any and all damages, liabilities, charges, costs, expenses and fees arising from or resulting from their failure to provide shipping instructions and/or customs documentation and/or to accept delivery of the Cargo.

31. Under the terms of the HAPAG-LLOYD Sea Waybills and applicable law, Defendants also warranted and guaranteed the accuracy of the particulars of the Cargo booked for shipment, including the description and nature of the Cargo, and agreed to indemnify HAPAG-LLOYD for any loss, damage and expenses arising from inaccuracies in such particulars, the violation of government laws and regulations, and for the shipment of banned cargo to China.

32. Under the terms of the HAPAG-LLOYD Sea Waybills and applicable law, Defendants further agreed to be liable and responsible for any and all freight and other charges due under the HAPAG-LLOYD Sea Waybills and/or applicable tariffs.

33. Defendants breached the terms of the HAPAG-LLOYD Sea Waybills by, inter alia, failing to provide the required shipping instructions and/or customs documentations and/or accepting or arranging delivery of the Cargo, misdeclaring the particulars of the contents of the Idle Containers, including their nature and being banned from import into China, failing to pay all charges relating to the transportation, storage and handling of the Cargo in the Idle Containers, and by failing to pay HAPAG-LLOYD the damages, liabilities, detention, demurrage, charges, salvage costs, transshipment and destruction costs,

and other expenses and fees arising from Defendants' breach or breaches of the HAPAG-LLOYD Sea Waybills.

34. As a proximate cause of Defendants' breach or breaches of the HAPAG-LLOYD Sea Waybills, breach of warranty, and the matters set forth herein, HAPAG-LLOYD has incurred, and Defendants are joint and severally liable to HAPAG-LLOYD for, damages in an amount exceeding US$1,867,163.68, which includes, but is not limited to, amounts due for detention, demurrage, storage, customs fees and penalties, salvage and disposal costs, delivery costs, transshipment and destruction costs, inspection costs and administrative costs.

## SECOND CAUSE OF ACTION

(Money Due Under Marine Tariff)

35. HAPAG-LLOYD refers to and incorporates by reference as though set forth herein at length its allegations in paragraphs 1 through 34 above.

36. HAPAG-LLOYD transported and carried the Cargo in the Idle Containers as described herein, at the request and for the benefit of Defendants, and in accordance with the terms and conditions of the HAPAG-LLOYD Sea Waybills and subject to the rates and charges in its tariffs on file with the Federal Maritime Commission.

37. Under the said tariffs, HAPAG-LLOYD is required to collect and is entitled to recover from Defendants, and Defendants are required to pay HAPAG-LLOYD, all unpaid demurrage, detention, port and terminal storage charges, and any other damages, liabilities, charges, penalties, costs, expenses and fees arising from the carriage of the Idle Containers, Defendants' failure to provide required shipping instructions and/or customs documentation and/or accept delivery of the Idle Containers, Defendants' misdeclaration of the nature of the contents of the Idle Container and/or shipping banned Cargo to China.

38. Despite demand for payment, Defendants have failed to pay HAPAG-LLOYD amounts due under the tariffs and tariff compensation is due, owing and unpaid to HAPAG-LLOYD from Defendants in an amount exceeding US$1,867,163.68. Additional charges continue to accrue in accordance with the terms of said tariffs, together with attorneys' fees, costs and expenses incurred in collecting said charges.

## THIRD CAUSE OF ACTION

(Negligence)

39. HAPAG-LLOYD refers to and incorporates by reference as though set forth herein at length its allegations in paragraphs 1 through 38 above.

40. At all material times herein, Defendants owed HAPAG-LLOYD a legal duty to exercise due care to provide required shipping instructions and/or customs documentation, to accept delivery of the Idle Containers in Hong Kong and/or Gaolan, to ensure that the particulars of the contents of the Idle Containers were not misrepresented or misdeclared to HAPAG-LLOYD, and to ensure cargo banned from importation into China was not shipped. The legal duty of Defendants to HAPAG-LLOYD arose because Defendants are parties to the HAPAG-LLOYD and/or issued the CTS Bills of Lading. The legal duty of Defendants to HAPAG-LLOYD also arose independently of the aforesaid sea waybills because of many factors, including, without limitation, the foreseeability of harm to HAPAG-LLOYD from their acts and omissions, the degree of certainty that HAPAG-LLOYD suffered injuries, the closeness of the connection between Defendants' conduct and the injury suffered, the moral blame of Defendants' conduct, and the availability, cost and prevalence of insurance to cover risks involved.

41. Defendants breached said duty of care by, inter alia, failing to provide required shipping instructions and/or customs documentations and/or accept delivery of the Idle Containers in Hong Kong or otherwise arranging for

-14-

its delivery, for negligently misrepresenting and/or misdeclaring the particulars of the Cargo in the Idle Containers, including the nature of the shipments, and/or for shipping banned cargo to China.

42. As a proximate result of the negligence of Defendants, HAPAG-LLOYD has incurred, and Defendants are joint and severally liable to HAPAG-LLOYD for, additional freight, storage, demurrage, detention, liabilities, charges, penalties, costs, expenses and fees in an amount exceeding US$1,867,163.68 plus any additional damages and costs as they continue to accrue.

## FOURTH CAUSE OF ACTION

(For Work and Labor Performed/Quantum Meruit)

43. HAPAG-LLOYD refers to and incorporates by reference as though set forth herein at length its allegations in paragraphs 1 through 42 above.

44. In or about October to December 2016, Defendants became indebted to HAPAG-LLOYD for the work and labor performed by HAPAG-LLOYD at the request and for the benefit of Defendants, for which Defendants agreed to pay HAPAG-LLOYD.

45. Despite due demand, Defendants owe HAPAG-LLOYD an amount exceeding US$1,867,163.68 for said work and labor performed and/or HAPAG-LLOYD is entitled to recover the value of said work and labor pursuant to the doctrine of quantum meruit.

## FIFTH CAUSE OF ACTION

(For Intentional Misrepresentation)

46. HAPAG-LLOYD refers to and incorporates by reference as though set forth in paragraphs 1 through 45 above.

47. Defendants falsely described to HAPAG-LLOYD the Cargo in the Idle Containers and/or submitted documents to HAPAG-LLOYD falsely describing the Cargo in the Idle Containers.

-15-

48. Defendants knew that the Cargo in the Idle Containers was not "copper ingots." They knew that the representation to HAPAG-LLOYD that they were shipping "copper ingots" was false when made and false when HAPAG-LLOYD subsequently asked Defendants for the required shipping instructions and/or customs documentation and/or to take possession of the Idle Containers.

49. Defendants knew that HAPAG-LLOYD would reasonably rely on Defendants' intentional misrepresentations, and HAPAG-LLOYD did reasonably rely on Defendants' representations when accepting the Idle Containers for shipment, to its detriment.

50. HAPAG-LLOYD's damages as a result of Defendants' actions include but are not limited to additional storage, demurrage, detention, transshipment and destruction costs, liabilities, charges, penalties, other costs, expenses and fees in an amount exceeding US$1,867,163.68 plus any additional damages and costs as they continue to accrue.

**SIXTH CAUSE OF ACTION**

(For Negligent Misrepresentation)

51. HAPAG-LLOYD refers to and incorporates by reference as though set forth in paragraphs 1 through 50 above.

52. Defendants falsely described to HAPAG-LLOYD the Cargo in the Idle Containers and/or submitted documents to HAPAG-LLOYD falsely describing the Cargo in the Idle Containers.

53. Defendants had no reasonable grounds to believe that the Cargo in the Idle Containers was "copper ingots" and intended for HAPAG-LLOYD to rely on the representation that these shipments consisted of copper ingots or zinc oxide.

54. Defendants' misrepresentations to HAPAG-LLOYD were negligent.

55. HAPAG-LLOYD's damages as a result of Defendants' actions include but are not limited to additional freight, storage, demurrage, detention,

1 transshipment and destruction costs, liabilities, charges, penalties, other costs,
2 expenses and fees in an amount exceeding US$1,867,163.68 plus any additional
3 damages and costs as they continue to accrue.

### SEVENTH CAUSE OF ACTION

(For Declaratory Relief)

56. HAPAG-LLOYD refers to and incorporates by reference as though set forth herein at length its allegations contained in paragraphs 1 through 55 above.

57. There is an actual controversy between HAPAG-LLOYD and Defendants regarding the legal rights and duties of the parties with respect to the Cargo in the Idle Containers. HAPAG-LLOYD contends that the Defendants are responsible and liable to HAPAG-LLOYD for any and all additional freight, storage, demurrage, detention, transshipment and destruction costs, liabilities, charges, penalties, other costs, expenses and fees arising from the carriage of the Cargo in the Idle Containers, Defendants' failure to provide required shipping instructions and/or customs documentation and/or accept delivery of the Cargo in the Idle Containers, Defendants' misdescription and misdeclaration of the particulars of the Cargo in the Idle Containers, and/or arising from Defendants shipping loose mud and dirt to China. HAPAG-LLOYD is informed and believes and thereupon alleges that the Defendants deny they are responsible and liable to HAPAG-LLOYD for the aforesaid damages and dispute in some manner the contentions of HAPAG-LLOYD.

58. HAPAG-LLOYD seeks a declaration of the rights and liabilities of HAPAG-LLOYD and Defendants pursuant to 28 U.S.C. Section 2201.

### PRAYER

WHEREFORE, Plaintiff HAPAG-LLOYD prays for judgment against Defendants, and each of them, as follows:

-17-

1. That the Court order judgment in favor of HAPAG-LLOYD and against the Defendants, and each of them, in an amount not less than US$1,867,163.68, for any and all additional freight, storage, demurrage, detention, transshipment and destruction costs, liabilities, charges, penalties, other costs, expenses and fees caused by Defendants' breach or breaches of the HAPAG-LLOYD Sea Waybills and/or applicable tariffs, negligence, for all amounts due under HAPAG-LLOYD's tariffs, and for HAPAG-LLOYD's work and services performed or quantum meruit as well any additional damages and costs that continue to accrue at an amount to be established at trial;

2. That the Court declare the rights and liabilities of the parties;

3. That the Court award HAPAG-LLOYD its attorneys' fees, costs and expenses incurred as a result of Defendants' breach or breaches and/or in collecting the sums due from Defendants;

4. That the Court award HAPAG-LLOYD interest on all of the above as well as its costs of suit; and

5. That the Court award such other and further relief as the Court deems just and proper.

Dated: October 7, 2019

GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ *James A. Marissen*
JAMES A. MARISSEN
RACHEL A. WEITZMAN
Attorneys for Plaintiff
HAPAG-LLOYD AKTIENGESELLSCHAFT, HAMBURG.